UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD K. BOWIE,

    Plaintiff

v.

OAKLAND COMMUNITY COLLEGE,

    Defendant.
_____/

Case No. 21-10098

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO THE FEDERAL CLAIMS AGAINST IT (Dkt. 19) AND (2) DISMISSING WITHOUT PREJUDICE PLAINTIFF'S STATE-LAW CLAIM**

Before the Court is Defendant Oakland Community College's motion for summary judgment (Dkt. 19). For the following reasons, the Court grants the college's motion for summary judgment as to the Title VII claims and dismisses without prejudice the remaining state-law claim.[1]

**I. BACKGROUND**

Edward Bowie, an African-American man, brings this action based on alleged race discrimination by his employer, the college. Compl. at PageID.10–14 (Dkt. 1). Bowie has worked for the college as a building custodian from May 25, 1998 to the present. Bowie Dep. at PageID.209 (Dkt. 19-3).

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion for summary judgment, the briefing includes Bowie's response (Dkt. 39) and Oakland Community College's reply (Dkt. 24).

**A. The Daytime Custodian Application Process and Job Responsibilities**

The alleged discrimination Bowie complains of took place during and after his successful application process to transfer from his night-shift custodian position to a day-shift custodian position at the Auburn Hills campus of the college in 2017.[2] On September 26, 2017, Frank Zechmeister, the Auburn Hills chief of campus facility operations, emailed multiple individuals, including Bowie, indicating that there was an opportunity to transfer to a daytime custodian position and asked that potential candidates email him to indicate their interest. 9/26/17 Zechmeister Email at PageID.1505–1506 (Dkt. 39). Bowie responded the same day that he would like to be considered. 9/26/17 Bowie Email at PageID.1506 (Dkt. 39). On September 27, 2017, Zechmeister thanked Bowie for his interest in the position. 9/27/17 Zechmeister Email at PageID.1506 (Dkt. 39). On September 28, 2017, Zechmeister emailed multiple individuals, including Bowie, a link to the job description and a list of duties for the daytime custodian position. 9/28/17 Zechmeister Email at PageID.232 (Dkt. 19-4). The list of duties included, among other responsibilities, emptying the outside garbage cans, assisting with mail, and moving furniture. Id.

In October 2017, Bowie met with Zechmeister and Bob Kelly, executive director of facilities operations, to discuss the duties of the daytime custodian. Resp. at PageID.1493.[3] At the meeting, Bowie was offered the job and accepted it. Id. Bowie, a union member, did not have union representation at the meeting. Id. Bowie asserts that he was told of new job responsibilities at this meeting, and that he was "coerced into accepting the revised position on the spot." Id.

---

[2] Bowie was initially hired to the Orchard Ridge campus in May 1998, see Resp. at PageID.1492, but he was apparently transferred to the Auburn Hills campus in 2011 as part of the "resolution" to a dispute that he had with the college, see id. at 1493, which he does not further explain.

[3] The parties' briefing does not expressly state that Kelly had this title in October 2017, but documents submitted show that he held this title within a year or two after this meeting. His exact title at the time of the meeting is not material to the Opinion.

On October 13, 2017, Bowie signed a document acknowledging the job duties that came with the daytime custodian position, including emptying outside trash, helping with mail, and moving furniture. 10/13/17 Work Duties at PageID.235 (Dkt. 19-5). He acknowledged that he had "read the above list of work duties," and that he "underst[oo]d this position is more than just the normal work duties of a custodian." Id. He "agree[d] to complete all tasks require[d] of [him] in this position." Id. In this new role, Bowie reported to Kelly Taylor, the Manager of Campus Facilities for the Auburn Hills campus, as well as to Kelly, Zechmeister, and John Nagalski, the superintendent of buildings and grounds for the Auburn Hills campus. Resp. at PageID.1483.[4]

### B. Alleged Harassment by Robert Cowles

Bowie contends that Robert Cowles is one of multiple college employees who has mistreated him. Resp. at PageID.1483.[5] Cowles, a white coworker, allegedly verbally harassed Bowie approximately 17 times in 2018, although he never mentioned Bowie's race or color. Bowie Dep. at PageID.214–215, 223. Cowles is also a custodian and does not have supervisory authority over Bowie. Mot. at PageID.157; Resp. at PageID.1484.

Bowie emailed Zechmeister a complaint about Cowles on December 18, 2018, and copied Jason Witt on the email.[6] 12/18/18 Bowie Email at PageID.225 (Dkt. 19-4). Bowie complained that Cowles had turned off the light inside the garage after leaving a full bag of garbage for Bowie to take to the dumpster. Id. Bowie requested that "you put [Cowles] on notice to stop bullying

---

[4] The parties' briefing does not expressly state that Nagalski had this title, but documents submitted show that he held this title in 2020. His exact title at the time Bowie became a daytime custodian is not material to the Opinion.

[5] Bowie previously made a complaint about Cowles in 1999; at the time, the superintendent reprimanded Cowles and escorted him off campus. Bowie Dep. at PageID.222.

[6] The briefing from the parties does not provide a job title for Jason Witt.

3

me." Id.[7] Cowles was ordered to stay away from Bowie, but on December 19, 2018, Bowie emailed Zechmeister to complain that Cowles had not appeared to assist with a team assignment. 12/19/18 Bowie Email at PageID.226 (Dkt. 19-4).[8]

On January 9, 2019, Bowie emailed Cowles asking him to cease the alleged "bullying" and "harassment." 1/9/19 Bowie Email at PageID.1522 (Dkt. 39). Bowie claims he also emailed Zechmeister on January 9, 2019 to follow up about Bowie's prior harassment complaint. Resp. at PageID.1494.[9] On January 14, 2019, Bowie contacted Kurt Wirth, the president of Bowie's union, seeking to file a "[g]rievance on [m]anagement" for Cowles's "aggressive, intimidating, bullying behavior," and instructing Wirth to "present the grievance to Frank Zechmeister." 1/14/19 Bowie Email at PageID.1524 (Dkt. 39). Bowie indicated a belief that management was ignoring his concerns and was engaged in "[d]isparate [t]reatment" and creating a "[h]ostile [w]ork [e]nvironment." Id. The email did not mention race. See id. On January 15, 2019, Bowie met with Karen Bathanti, vice chancellor of human resources, and gave her a harassment complaint against Cowles, Taylor, and Zechmeister. Resp. at PageID.1494.[10]

---

[7] Bowie claims that on December 18, 2018, Zechmeister "denied [Bowie's] right . . . to file a complaint for workplace bullying against him from Bob Cowles," but it is not clear what this means. Resp. at PageID.1494. Bowie cites his Exhibit 5 (Dkt. 39 at PageID.1517–1518), but this document is just the same 12/18/2018 email in which Bowie asked Zechmeister, with Witt copied, to "put [Cowles] on notice to stop bullying me."

[8] Bowie claims that on January 7, 2019, he "reached out to Jason Witt to file a grievance against Mr. Zechmeister for disparate treatment and harassment but was denied." Resp. at PageID.1494. It is not clear what this means. Bowie cites his Exhibit 6 (Dkt. 39 at PageID.1519–1520), but this exhibit is largely illegible.

[9] Bowie asserts that "Mr. Zechmeister refused to accept [his] complaint," but he does not explain what this means or cite any record evidence to support this proposition. Id.

[10] Bowie does not provide a copy of this complaint or summarize its contents. See id.

On March 27, 2019, Bowie emailed Bathanti because Zechmeister had directed him to take the outside trash out, despite the incident with Cowles. Resp. at PageID.1495. Bowie claims that he was afraid of Cowles because Cowles had a history of violence. Id. On April 4, 2019, Bathanti determined that Bowie's concerns "do not rise to the level of harassment or discrimination" based on the college's policy and denied Bowie's "request to only work inside and not perform the essential duty of emptying outside trash." 4/4/19 Bathanti Letter at PageID.230 (Dkt. 19-4).

## C. Alleged Denial of Seniority-Based Perks

Bowie also alleges that he was denied seniority-based perks and preferred overtime status guaranteed to him by his union contract in several instances. First, in November 2018, Nagalski offered the afternoon shift employees overtime and did not offer this overtime to Bowie. See 11/21/18 Wirth Email at PageId.1516 (Dkt. 39). Second, in July 2019, Chantell Hickman, a white woman, was offered overtime that Bowie was not. See Resp. at PageID.1496. Finally, other employees were invited to return to work during the COVID-19 pandemic before he was, while Bowie was required to use vacation time, sick time, and personal time to cover payroll between March and May 2020 even though he was willing to work. See id. Bowie claims he has more seniority than these other employees. See Resp. at PageID.1493, 1496.

Bowie states that he filed a grievance against Zechmeister for denying him requested vacation time on June 8, 2020. Id. at PageID.1496.[11] According to Bowie, Bathanti and Dan Cherewick, director of physical facilities, allowed the grievance to expire and did not take matters to the human resources department, which he claims was required by the previous resolution between Bowie and the college. Id. at PageID.1496–1497.

---

[11] Bowie cites his Exhibit 16 (Dkt. 39 at PageID.1679–1680), but this exhibit is illegible.

## II. ANALYSIS[12]

Bowie brings suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., as well as under the Elliott-Larsen Civil Rights Act, Mich. Comp. L. § 37.2102, et. seq., and Michigan common law.[13]

His complaint appears to allege disparate treatment based on race, Compl. ¶ 9(B), but also refers to "harassment," see id. ¶¶ 25-28, and "retaliation," see id. ¶ 42(E). As a result, this Court understands Bowie to allege disparate treatment, hostile work environment, and retaliation claims under Title VII. The college's motion for summary judgment focuses largely on the claims of hostile work environment, see Mot. at PageID.159–161, and retaliation, see id. at PageID.162, but clearly requests that summary judgment be granted as to all of Bowie's claims, id. at PageID.163. Bowie's legal argument in response focuses largely on the hostile work environment claim, Resp. at PageID.1499–1502, although his response also refers to "disparate treatment," id. at PageID.1494, and "retaliation," id. at PageID.1493, 1496, and clearly requests that summary judgment be denied as to all claims, id. at PageID.1480.

As a result, the Court evaluates whether Bowie has raised a genuine issue of material fact with respect to a hostile work environment, disparate treatment, or retaliation claim under Title VII.

---

[12] In assessing whether the college is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

[13] Bowie's complaint also alleged failure to promote under Title VII, Compl. ¶ 9(A), and breach of contract, Compl. ¶¶ 43–47. The failure to promote and the breach of contract claims have since been voluntarily stricken from the complaint. 10/01/21 Stip. and Order (Dkt. 9).

Because the Court finds that he has not, the Court grants the college's motion for summary judgment as to the Title VII claims and dismisses without prejudice Bowie's state-law claim.

**A. Title VII Hostile Work Environment**

Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[] [or] color[.]" 42 U.S.C. § 2000e–2(a)(1). Discrimination is actionable under Title VII when it is "sufficiently severe or pervasive" that it "alter[s] the conditions of [the individual's] employment and create[s] an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).

To establish a prima facie hostile work environment claim under Title VII, Bowie must establish that: (i) he is a member of a protected class; (ii) he was subjected to unwelcomed harassment; (iii) the harassment was based on race; (iv) the harassment created an intimidating, hostile, or offensive work environment that unreasonably interfered with his work performance; and (v) the college, as his employer, is liable for that harassment. See Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999). The college concedes that Bowie, as an African-American, has established the first prong. Mot. at PageID.159. The Court finds, however, that Bowie has not demonstrated a genuine issue of material fact that the alleged harassment was race-based, or that the harassment was severe or pervasive, or that the college is liable for any coworker harassment.

Even if the actions of Cowles and other colleagues constituted unwelcomed harassment, Bowie has not produced evidence that the harassment was based on race, and so cannot establish a prima facie case of hostile work environment discrimination. "A plaintiff may prove that harassment was based on race by either (1) direct evidence of the use of race-specific and derogatory terms or

(2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace." Williams v. CSX Transp. Co., Inc., 643 F.3d 502, 511 (6th Cir. 2011).

Bowie has not provided any direct evidence that his colleagues utilized "race-specific and derogatory terms." See id. Bowie also has not provided meaningful comparative evidence suggesting that coworkers—namely, Cowles—or other staff members—such as Zechmeister, Taylor, and Nagalski—treated workers of different races differently than they treated Bowie. See id. To the contrary, Bowie admits that Cowles also mistreated white coworkers. Mot. at PageID.158; Resp. at PageID.1485 (admitting that "Cowles harassed and physically assaulted another man, a Caucasian"); see also Resp. at PageID.1494 (indicating that two white coworkers, Allen Gibson and Greg Obidzinski, had previously made complaints about harassment by Cowles). And while Bowie asserts that complaints of harassment submitted by white workers, namely Gibson, Obidzinski, Scott Hayes, and Chantell Hickman, were handled differently than his were, he provides no record evidence to support this assertion. See id.[14] Moreover, when Bowie complained to Zechmeister and Witt in December 2018, and to Wirth in January 2019, Bowie referred to Cowles's conduct as "bullying," but did not mention a belief that either Cowles's behavior or management's handling of Bowie's complaints was based on race. See 12/18/18 Bowie Email; 1/14/19 Bowie Email.

Additionally, Bowie cannot meet his burden of proving by a preponderance of the evidence that the alleged harassment created an intimidating, hostile, or offensive work environment that unreasonably interfered with his work performance. See Hafford, 183 F.3d at 512. To evaluate

---

[14] Bowie cites his Exhibit 7 in support of his contention that "Scott Hayes and Chantell Hickman, who are both Caucasian, filed harassment claims that were both processed." Id. Exhibit 7 does not mention either of these individuals, and instead contains an email dated January 9, 2019 from Bowie to Cowles asking Cowles to stop the alleged harassment and bullying. See 1/09/19 Bowie Email at PageID.1521–1522 (Dkt. 39).

the fourth prong, this Court must "examine the totality of the circumstances," including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Barrett v. Whirlpool Corp., 556 F.3d 502, 515 (6th Cir. 2009) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment," and "[s]imple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 788, 788 (1998) (punctuation modified).

Bowie had approximately 17 negative interactions with Cowles over the course of 2018—amounting to one or two negative interactions with Cowles per month—yet none was explicitly related to Bowie's race. Bowie Dep. at PageID.214–215, 223. Significantly, the harassment Bowie alleges includes acts like turning off lights, and leaving a trash bag, 12/18/18 Bowie Email, which on this record cannot be construed as severe. While Bowie now argues that Cowles was also recording and threatening him near the garbage cans, Resp. at PageID.1485, Bowie does not produce any evidence that such a recording exists, and he does not detail any threatening statements made by Cowles.[15] Moreover, Bowie did not mention any threatening words or behaviors when he emailed Zechmeister and Witt about the incident. See 12/18/18 Bowie Email.

---

[15] In his response, Bowie cites his Exhibit 12 for the proposition that "Plaintiff was being recorded and threatened near trash cans by Mr. Cowles. Because there are no cameras located there[,] Plaintiff was in fear for his safety." Id. at PageID.1485. Exhibit 12, located at PageID.1640–1644 (Dkt. 39), contains documents that do not support this proposition: one entirely blacked out page, an April 2019 email from Bathanti to Bowie unrelated to threats, and the Discrimination and Harassment Policy Bathanti attached to said email.

Bowie is also unable to establish the college's liability for any harassment at the hands of his coworkers. Bowie must show under this fifth prong that the college "knew or should have known of the conduct, and that its response manifested indifference or unreasonableness." Jackson v. Quanex Corp., 191 F.3d 647, 663 (6th Cir. 1999). The appropriateness of the response is judged in light of the frequency and severity of the harassment. Id.

Nothing in the present record indicates indifference or unreasonableness on the part of the college in responding to allegations of harassment or discrimination. While Bowie alleges that Cowles verbally harassed him approximately 17 times in 2018, Bowie did not report Cowles until December 2018. When Bowie did eventually complain to Zechmeister and Witt about Cowles's "workplace bullying," 12/18/18 Bowie Email, Cowles was ordered to stay away from Bowie. When Bowie emailed Kurt Wirth on January 14, 2019, complaining again about Cowles's behavior, Wirth forwarded that email to Karen Bathanti, 01/14/19 Wirth Email at PageID.229 (Dkt. 19-4), and Bathanti ultimately met with Bowie to discuss his concerns. Mot. at PageID.157; Resp. at PageID.1484 (admitting this fact).[16] However, Bathanti found that he was not being subjected to harassment or discrimination. 4/4/19 Bathanti Letter. Bowie does not argue that he notified the college of any race-based discrimination, and he does not argue that the college should otherwise have been on notice of any race-based discrimination.

Bowie argues that "his superiors and coworkers," not just Cowles, "made his work environment extremely difficult." Resp. at PageID.1485. He asserts that his complaints against coworkers were not "justly adjudicated," but does not explain what he means by this or give specific examples. Resp. at PageID.1499. He argues he was subjected to additional work that

---

[16] Bowie's complaint states that the alleged discriminatory acts occurred beginning January 14, 2019, Compl. ¶ 5, presumably when he complained about Cowles's behavior to Wirth.

previous day shift custodians and non-day shift custodians did not have to perform, such as completing extra work orders referred to as "School Dudes." See Resp. at PageID.1494. But Bowie was provided with the daytime custodian job responsibilities before he accepted the position and signed a form acknowledging that "this position is more than just the normal work duties of a custodian." 10/13/2017 Work Duties. The College requiring him to perform those responsibilities is not harassment. Bowie asserts that rules were differentially enforced against himself and his white colleagues, Resp. at PageID.1486, but does not give specific examples. He also asserts that he was denied seniority-based perks that he was entitled to. Resp. at PageID.1500. However, Bowie fails to present admissible evidence showing that he was denied seniority-based perks, or that any such denials were related to his race. See id. He states that his race is "the only explanation," id., but a plaintiff "cannot rely on conjecture or conclusory statements" to survive summary judgment, Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008).

None of these allegations suffices to create a triable issue of fact. As a result, Bowie cannot succeed on a hostile work environment claim.

**B. Title VII Disparate Treatment Claim**

To establish a prima facie case of disparate treatment, Bowie must demonstrate that: (i) he is a member of a protected class, (ii) he was qualified for his job and performed it satisfactorily, (iii) he suffered an adverse employment action, and (iv) he was treated less favorably than a similarly situated individual outside the protected class. See Laster v. City of Kalamazoo, 746 F.3d 714, 727 (6th Cir. 2014).

While Bowie is a member of a protected class, his disparate treatment claim fails because he has not been subjected to an adverse employment action. An adverse employment action is a "materially adverse change in the terms or conditions of employment." Id. (quoting Kocsis v.

11

Multi–Care Mgmt. Inc., 97 F.3d 876, 885 (6th Cir. 1996) (punctuation modified). Such changes can include "'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

Here, Bowie complains that he has too much responsibility because he was selected for a new position through a competitive process. While Bowie asserts that rules were differentially enforced as to him compared to white employees, Resp. at PageID.1500, he presents no evidence to support this contention. Bowie argues that the job responsibilities for the daytime custodian position were altered because he expressed interest in the position, but again provides no support for this contention, other than the fact that he expressed interest in the position before Zechmeister distributed the job responsibilities to multiple individuals via email. While Bowie complains that he was responsible for different job responsibilities than other custodians, he was not simply reassigned to a position with significantly different responsibilities—he adopted these job responsibilities voluntarily by applying for and accepting a new position. He also complains that he is the only custodian who reports to Kelly Taylor, "who expect[s] her work prioritized," Resp. at PageID.1483, and the only custodian required to report to four supervisors, but he does not explain why differential supervision structures for custodians working different shifts with different job responsibilities should be construed as an adverse employment action.

As a result, Bowie cannot succeed on a Title VII disparate treatment claim.

## C. Title VII Retaliation Claim

To establish a prima facie case of retaliation under Title VII, Bowie must establish that: (i) he engaged in activity protected under Title VII, (ii) the college knew about the protected activity, (iii) the college then took an action materially adverse to Bowie or "subjected [him] to severe or

12

pervasive retaliatory harassment", and (iv) there was a causal link between his protected activity and the college's adverse employment action. Barrett, 556 F.3d at 516. Bowie cannot establish a prima facie case because he fails to demonstrate a causal connection between protected activity and any adverse employment action by the college.

Title VII protects employees who file a charge with the United States Equal Employment Opportunity Commission (EEOC), as well as employees who oppose unlawful discrimination such as by complaining to a manager, union, or other employees about conduct that the employee believes in good faith is unlawful under Title VII. Laster, 746 F.3d at 729–730. Bowie, therefore, engaged in protected activity when he filed a charge of discrimination with the EEOC—but he does not mention this activity once in his response brief, and thus has not developed an argument that this conduct led to retaliation. The Court need not develop one on his behalf. ECIMOS, LLC v. Nortek Glob. HVAC, LLC, 736 F. App'x 577, 585 (6th Cir. 2018) ("[I]t is a party's burden to . . . make the argument because judges are not like pigs, hunting for truffles that might be buried in the record.") (punctuation modified). And Bowie's internal complaints and grievances cannot be construed as protected activity, since he complained of general bullying and mistreatment, see 12/18/18 Bowie Email, or made vague allegations of "[d]isparate [t]reatment" and a "[h]ostile [w]ork [e]nvironment," see 1/14/19 Bowie Email, rather than complaining specifically about race discrimination. See Khalaf v. Ford Motor Co., 973 F.3d 469, 489 (6th Cir. 2020) (stating that to demonstrate protected activity, a plaintiff "must show that he took an overt stand against suspected illegal discriminatory action," and that "an employee may not invoke the protections of the Act by making a vague charge of discrimination") (punctuation modified, citations omitted). Thus, Bowie fails to articulate and substantiate how any engagement in protected activity triggered actionable conduct by the college.

13

He also fails to substantiate any materially adverse action. In the context of a retaliation claim, a materially adverse action is one that "a reasonable employee would have found . . . materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Laster, 746 F.3d at 719 (quoting Burlington N. and Sante Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)) (punctuation modified). While Bowie argues that he was assigned more work as retaliation, he was simply made to fulfill the job responsibilities of the daytime custodian, a position for which he voluntarily applied and then voluntarily accepted.[17] The duties he complains about, including moving furniture and emptying the outside trash, were detailed before Bowie accepted the position. See Bowie Dep. at PageID.219–221; 9/28/17 Zechmeister Email; 10/13/2017 Work Duties. Moreover, these job responsibilities were assigned and agreed to before Bowie made any of the complaints detailed in his briefing and therefore cannot be retaliatory actions; the first complaint of harassment Bowie cites is his December 18, 2018 email to Zechmeister and Witt about Cowles's behavior. See 12/18/18 Bowie Email; Resp. at PageID.1483 ("For purposes of this action the harassment from Mr. Cowles started on December 18th, 2018."). Differential enforcement of rules and disproportionate discipline can constitute materially adverse actions, see Laster, 746 F.3d at 732, but Bowie fails to present any evidence that such actions were actually taken against him.

Bowie also asserts, however, that the college "retaliated against him by favoring other employees for better work perks that should be based on seniority." Resp. at PageID.1490; see also, id. at 1495–1496. Denying seniority-based perks could arguably discourage a reasonable worker from reporting discrimination. But, as discussed above, Bowie has failed to substantiate

---

[17] While Bowie asserts that he was "coerced" into accepting the position that he applied for, Resp. at PageID.1493, there is no evidence to support Bowie's conclusory assertion that he did not voluntarily accept this position.

14

that he was denied seniority-based perks, and Bowie has not provided any evidence demonstrating a causal connection between his filing of an EEOC charge and the alleged denial of seniority-based perks.

In addition to retaliation claims based on materially adverse actions, Title VII also allows retaliation claims grounded in retaliatory coworker harassment where (i) the "retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination"; (ii) "supervisors or members of management have actual or constructive knowledge of the coworker's retaliatory behavior"; and (iii) "supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances." Laster, 746 F.3d at 732. Bowie cannot succeed in demonstrating retaliatory harassment for some of the same reasons he cannot succeed in demonstrating a hostile work environment—the alleged conduct was not severe, and the college responded reasonably to the complaints they received. Moreover, he has not demonstrated a causal connection between his filing of an EEOC charge and any alleged harassment.

The Court finds that Bowie cannot succeed on a claim of hostile work environment, disparate treatment, or retaliation, and grants summary judgment to the college on all Title VII claims.

### D. Elliott–Larsen Civil Rights Act (ELCRA) and Michigan Common Law Claim

Because the Court grants the college's motion as to the Title VII claims, the Court will exercise its discretion to decline to exercise supplemental jurisdiction over the remaining state-law claim by dismissing this claim without prejudice. 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–727 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

## III. CONCLUSION

For the reasons stated above, the college's motion for summary judgment (Dkt. 19) is granted as to the Title VII claims, and the remaining state-law claim is dismissed without prejudice.

SO ORDERED.

Dated: September 28, 2022             s/Mark A. Goldsmith
       Detroit, Michigan              MARK A. GOLDSMITH
                                                United States District Judge